Thank you very much, Your Honor. Let me punch my timer so I'll start my own timer. Okay. And with the court's indulgence, I'd like to reserve two minutes of my time for rebuttal. I'll try to help you. Thank you very much, sir. May it please the court. You've read the briefs. Your law clerks have read the briefs. This is a hot, hot bench. And what I'd like to do is ask you which particular issues would you like me to focus on? So I would be interested in your view of if, for example, we find error in the dismissal of the 496 claim, why isn't that error harmless? That would be my first question for you. That, I think, is a straightforward question. And the answer is pretty straightforward as well. If you, we have cited the case of Switzer v. Wood, as well as the basic, the first case, Bell v. Fybush. We've also submitted to the court the jury instructions that were submitted to the jury in the Switzer v. Wood decision. And we'd ask that the court take judicial notice of those. And if you take a look at what the jury instructions instructed them and what the you show that the appeal code has been violated and that it has caused damage. Those are separate elements from the elements of a fraud case. And the court of appeal made it quite clear that in Switzer, the jury found that there were defendants obtained by theft, property belonging to plaintiff, and concealed or withheld such property and or aided in concealing or withholding such property from plaintiff. Defendants knew the property was obtained by theft and plaintiff's violation of section 496a caused plaintiff to suffer actual damages, loss, or harm, which the California Court of Appeals said clearly established violations of section 496a. These are distinct from the eight elements of fraud on which the jury below was charged. As the Switzer court made clear, section 496 clearly and simply requires as a prerequisite for treble damages that a violation of the criminal offense described in the statute has been shown. I mean, I agree with you in general counsel, but I've compared the jury instructions here with the case that you have discussed and what appear to me to be the standard California criminal jury instructions for this offense. And with one exception, there seems to be a fairly general overlap to me. The only exception, and I'll be asking your friend on the other side about this, to me, the only major exception is as far as I can determine, there is no defense of waiver to the criminal charge. And obviously here, the jury was instructed on waiver. So putting aside for the minute, I would be interested in like what particular instruction of what you described, the eight elements aren't really a part of having to prove the criminal offense of receiving stolen property, even if you are the principal, as I believe you can be under section 496. I'm not sure I understand the question, your honor. Could you repeat it? Let me, let me ask it When you match up the elements of a 496 type offense for the receiving stolen property, as we have here for what the jury was actually instructed on the fraud counts, what do you see in those eight elements that really aren't in general a part of a receiving charge, even if they would be phrased slightly differently? Well, I, I, I'm not sure I understand it, but let me see if I can get back to you and how I do understand. A receiving charge is basically, well, first of all, the elements of the penal code that we're relying upon are not a receiving charge. It is a fraudulent charge because the statute defines theft as obtaining goods by fraud. Excuse me. Somehow my phone keeps coming in here and I can't get rid of it. So I'll get rid of this. I apologize. Um, um, the, the point is that, that we made the point in our opening brief that in fact, the elements are different. And what is notable is that Oracle's brief does not dispute that. They try and cite cases from other jurisdictions dealing with other issues, but nowhere does Oracle address the fact that in fact, the elements are different. Otherwise, why would you have a separate penal code civil penalty, uh, of treble damages, if you could simply recover the same thing for fraud, you'd simply say, okay, there's been fraud. And therefore, um, I get trouble damages because it's also a violation of the penal code. Well, I think, I think that question is one that in the de-published opinion, the Siri court talked about, but we're not here to decide California public policy. I would agree with that. And if you have any doubt about that, as you know, the Siri court of appeal decision has been de-published pending court of appeal review. And normally the Supreme court review. And my experience is that normally the Supreme court does not de-publish to take a case that it intends to affirm, particularly given the fact that the entire weight of authority in California is contrary to, uh, the Siri decision. Can I change the subject a little bit? Um, uh, if the district court didn't earn in, uh, motion and limiting with regard to damages and mitigation or damages on the spreadsheet, on what basis would the trial court instruct the jury on consequential and, uh, incidental damages? Let me see if I can reframe the question to make sure I understand it. Your Honor, you're saying if the trial court was not in error in striking our damages, which I believe it My question is if, if the court was not in error striking the damages on the spreadsheet, on what basis would the, would the trial court have instructed the jury on consequential and incidental damages? In other words, if those are out based on the motion and limiting, why would there be instructions with respect to consequential and incidental damages? Uh, I think the short answer to that, Your Honor, is because the court basically struck all of our consequential and incidental damages, there would be no need for that instruction. Okay. That, that, that, that's really what I was looking for. Is it realistic that I know, I know you disagree with what the district court did first, but if the district court did not earn, then you understand and agree that there'd be no point in having consequential and incidental instructions for the jury. I do. And if you'd like me to address the question of the clear error in striking our damages, I'd be glad to address that. Why don't you do that? That's an important element. Okay. So, um, first of all, Grouse River's disclosures fully complied with Rule 26A1A Roman III. Um, Grouse River manually filed a thumb drive with the court, which you can look at, with the actual Excel spreadsheet it gave to NetSuite, not once, not twice, but four times. It is part of the record on appeal. If you take a look at the summary tab has a computation of each of the components of Grouse River's damages. These are the same components that Grouse River supplied to Grouse River. The website that Grouse River used. Third, each of the 20 tabs provides detailed computational support taken directly from the accounting system NetSuite supplied to Grouse River as part of the overall NetSuite solution. But were those your operative damages that you were claiming before your expert was ruled, um, before the district court ruled your expert couldn't testify? Absolutely. Wasn't what you were going on, your expert's damage calculations. And then, uh, after the district court, uh, ruled him out, you then said, well, no, let's go back to these, uh, these other spreadsheets and damages, which until the expert was struck, wasn't your operative damage calculation. Do I have that wrong? You do have it wrong, your honor. At all times, we had maintained that these were our operative damages. We brought in an expert to also give his opinion on a different damages theory, but that did not preclude us from going back to our original damages computation, which we supplied from day one in this case, four times throughout the case, uh, obviously fine tuning it as it went along. Uh, and I believe as a matter of law, if you take a look at, uh, the cases, uh, that you have here, there, there, there, there was no finding will. First of all, the court said that, that, um, we should have supplied this earlier. Well, that was an error because we certainly did supply it earlier, uh, numerous times. Second of all, before the court can exclude, uh, clearly competent evidence, it has to find under the rule 36 rubric and rule 26 rubric willfulness. There is absolutely no finding willfulness on this record. There can be no finding willfulness because we supplied this information lock, stock and barrel at all times in the case. Counsel, I, I, I didn't understand the argument in your brief, how, as it comes to us, if this was error, how it wasn't harmless, uh, the jury obviously didn't get to damages. Um, and I believe the, the essence of your argument was that, um, the jury not having this damage information sort of infected the whole case, but how does that demonstrate that the error was other than harmless? If the jury never got past questions one and two on the verdict form, how could, how could something that would have only come up after they'd answered questions one and two, and only if they'd answered one or both of them? Yes. Um, would they get to damages? How could that be a harmful error? Because the entire case changed. This is a case for, for fraud. And in a fraud case, the damages are necessarily part and parcel of your cause of action. You have to show that they are linked. And by throwing out, as, as Ms. Ray, um, told the jury, this changed the entire nature of the case. And under the R&R sales decision by this court, as well as the, uh, subsequent Toya Rivick decision, this automatically requires reversal and a new trial. Oracle has not addressed those cases, which is tellingly. Uh, and, um, the, the other point is that where you have, um, a exclusion of competent evidence, which this was, the error is presumed prejudicial and Oracle has the burden of showing that it was not prejudicial. As I understand it, counsel, you have not pointed to one piece of evidence as to liability that you offered, that the district court kept out. Is that right? Yes, we have, as a matter of fact. What, what, what, what have you presented in your briefs as to evidence which you proffered going to liability, which the district court ruled inadmissible or kept out? That goes to the district court's rule 12B6 and rule 12H rulings, um, basically throwing out our entire case of, of, of fraud. Okay. So let me, let me restate my question. What specific piece of evidence did you offer at trial or was kept out in a specific motion in limine? What document, what testimony did you offer that the district court kept out that went to liability? The testimony that Mr. Follis would have given that not only did the, did NetSuite defraud, uh, Grouse River leading up to the signing of the contract, but the contract itself was fraudulent because it repeated the same misrepresentations that in fact NetSuite could comply with and supply all of the metrics and all of the things that Grouse River wanted to have in this fancy operating, uh, enterprise system. And the judge excluded that clearly erroneously. Um, I see that I have reached my 13 minutes. If you want to save the balance of your time for rebuttal, you may do so. I do your honor. Unless you're, unless the court has other questions. That's fine. We can pick it up after you come back to the rebuttal. Thank you very much. Thank you. So Ms. Ray for Oracle please. Thank you, your honors. Um, Sarah Ray for Oracle and NetSuite. Uh, so I think it's, it's, um, important to focus, um, on some of the questioning that I was just posed to Mr. Kiva about harmlessness. Um, it is clear that with regard to both the dismissal of 496 and the exclusion of some portion of the damages evidence, um, both of those would have been harmless errors. Were they in error? We do not think that they were, but there is no way that with a jury that did not reach, uh, damages at all, uh, and determined on the evidence that was presented that there was no fraud, um, that those could have been errors that would have affected the outcome. So I I've looked at the jury instructions and the verdict form here. Am I correct that if the jury, uh, believed that you had shown waiver by clear and convincing evidence, the only way that that could be reflected on the verdict form was by answering questions one and two? Um, no, is that there's no other place that could have been reflected? That's correct, your honor. That was not included in the verdict form the court has. So do you agree that waiver is not in any way an affirmative defense to the crimes, uh, that are punishable by 496? Um, I, uh, do not think that in this case that the waiver was not as, um, was not something that the, uh, focus of the trial was, was about. Counsel, that may or may not be true, but my question was, do you agree that under California law, waiver is not a defense to the crimes that are punishable under section 496? Um, I agree that waiver is not, uh, applicable under, uh, the crimes of 496. Okay. So how then could we determine that the instruction on waiver was harmless, um, as to 496? Since from all we know from looking at the verdict form, the jury could have rejected the fraud claim, um, based on waiver and, uh, the judge that you're urging didn't give a special verdict so that we could know the answer to that question. Uh, how can we determine that if we find there was a 496 error, that there was harmless, that it was harmless because the jury was instructed on waiver, which was in, would be inapplicable to a 496 claim? Well, I think in this case, your honor, it is very clear from the record that the jury determined that there was no liability here. Uh, and the, and the waiver was not something that came up, um, extensively in the, in the trial. Um, it is something that there was evidence to support a finding of waiver. Absolutely. Um, but what was, what was, what was the evidence to support waiver? That is that, uh, knowing, uh, of the existence of a fraud cause of action that Grouse River, uh, knowingly forewent that claim by entering into some type of new agreement with, uh, Oracle. What was the evidence that knowing of a claim, they waived it by entering into, uh, a novation or a new agreement? Yes, your honor. Uh, Grouse River entered into a second contract called the business requirements document several months after the signing of the first contract. Um, they had already, um, become aware of their, their claims. The second contract was on the same subject matter, and this is at the supplemental excerpt of record 276 through 278. What was the evidence that they were aware of their fraud claims at the time they entered several months later into that second contract? What was the evidence presented at trial specifically? Well, I believe that, um, at that point Grouse River, um, had, um, begun to complain about, um, the NetSuite contract. Um, so that's, that, that would be, I think, the extent of that. Okay. So they, they had begun to complain. Yes, your honor. All right. So now let's, let's get back to how it could possibly be harmless error with regard to 496, uh, given the waiver instruction. So let, let, let's assume for the moment that you're right. I'm not sure you are, but let's assume that there was evidence which justified the waiver defense being sent to the jury. Um, if your view is that there was evidence of waiver in the record, how could it be harmless? So 496. Right. So, so, so I think that it's very important to understand what it is that Grouse River pled in this, um, instance. Um, Grouse River only pled, um, that 484, uh, the, the, the, the criminal statute of theft, um, was violated. Grouse River did not plead anything relating to 496. Grouse River, um, uh, counsel just stated that he did not, um, rely on the, he was not relying on the 496 allegation in the complaint. All we had was the allegation that there was fraudulent, um, misrepresentation. Which the court, which the court dismissed with prejudice without leave to amend. Correct. But, but she dismissed it without leave to amend because based on the allegations in the complaint, there was no opportunity for Grouse River to, to fix this problem. And that's because again, the only theft alleged in this complaint was fraudulent misrepresentation and in Grouse River specifically, um, uh, alleged that it had, uh, obtained property from, I'm sorry, the next week had obtained property from Grouse River and the court found that, that Grouse River could not allege the element of knowing, uh, um, received a stolen property because there was no stolen property at issue in this, in this complaint. Although as I read what the district court said, the district court looking at the Bell case said that when the court of appeals said that, uh, the evidence established not only by receiving property from Bell by false pretenses by all, but also by withholding that property when she asked for it back, that the district court viewed both of those things as a requirement. Um, which I think as judge co-accurately pointed out in her decisions, just the misreading of the case. So I think that this case is actually quite different from, uh, Bell versus Bybush from Allure Labs from Switzer v. Wood, because in all of those cases, there was action taken with regard to property that had been stolen. The plain language of 496 requires that the property itself have the characteristic of having been stolen. And that is what was missing in this case. In this case, all that was alleged was that there was fraudulent misrepresentation and that through that fraud, Grouse River, uh, uh, pay NetSuite, um, it's money. I don't, I don't understand how that is not receiving property by false pretenses. If you make false or allegedly false or fraudulent representations to someone and, uh, as a result, you obtain money. Um, I mean, the way I read the California statute, that's one of the, uh, types of theft, uh, and the, uh, the Bell case talked about receiving property by false pretenses. And I don't understand how this isn't, uh, what, uh, Grouse River was, uh, was alleging. So I, the, the court, the district court held that what Grouse River was alleging was that, um, there was fraudulent misrepresentation. 496A reads in the plain language of the statute requires every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion. Or that has been obtained in any constituting theft or extortion, which the Bell courts that, um, deals with obtaining receiving property by false pretenses and the statute and the Bell court made it clear that even if you're the thief, um, you can be liable under this section for the receipt. You just can't be liable both as the thief and the receiver. Right. So, so I, I understand, um, your position, Judge Bennett. I believe that the amendment that you refer to a principle in the actual property may be convicted pursuant to this section was meant to clarify that the thief could in fact be the person who, uh, did something with a stolen property under 496 and could be held liable for, for that action as well. But the, the La Canina court stated that when the property comes into the possession of the defendant, it must already have the characteristic of having been stolen. That's the important point. Otherwise, 484 and 496 would be one in the same. There are two different criminal statutes. And so 484 is the, is the theft itself. And the thief can, as they, as it did in a lure labs secrete and conceal the stolen property after it is embezzled it as it did in Switzer V would, uh, sell the spinal implants for profit and keep that money for itself as it did in Bell versus by Bush refused to give it back to the person that stole it from when asked to and conceal it from them. And by doing, and by doing so, according to the court violated the statute separately, in addition to the actual receipt, not that both are required. And, and, and this, and the district court below found that, that when the thief is, uh, defendant, the thief must be taking action with regard to stolen property. And that the knowing element is really important here, your honor, because the thief must know that the property is stolen at the time it violates four 96 a and four 84. I will point out to the court in its plain language requires that before the crime of theft has been consummated, the person who is taking the money or property, um, get or obtain possession of it. So the theft doesn't four 84 is not, um, consummated until possession occurs. And so the, there is no stolen property under four 84 until possession occurs. So as a result for four 96, there must be some conduct with regard to the property. Once it has been stolen again, it must have, that's why you say that that's why you say it was the past tense and four 96. Correct. Your honor, the plain language of four 96 uses the past tense. It doesn't say steel. It says has been stolen. And that is the differentiation. And again, I mean, I agree with you that we do not need to get into on what the California Supreme court is determining about the policy, but the legislative history was, is very clear in all of these cases in Bell versus by Bush and Switzer as well, that what the legislature was aiming at was the market for stolen goods, the aftermarket, if you will, what happens to the goods once they've been stolen. And the amendment that judge Bennett referred to is simply to clarify that. Yes, the thief, it's not just the fence. It's not just the swap meat vendor. It's not just the pawn shop broker. It can also be the very thief who violates four 96, a, and in every case that either party has cited here, other than grouse river, there was action taken by the embezzler, the thief, the fraud, the fraudster to conceal or withhold or sell the stolen property that was absent. That was not alleged here. And so this district court determined that on the 44 allegation in the complaint by grouse river, that was only the underlying fraud. And that was not enough to say to claim under four 96 a now again, to go back to the original point, I think it's really important to remember here that this is still harmless error. Even if it, if the court disagrees with the district court's reading of four 96, a, and what it requires when the thief is the defendant, um, the, this is harmless error because the jury determined there was no fraud in every single case that is before this court. It is a pre counsel. Sorry, judge box. You've several different times. You've used phrases. The jury found no liability. The jury found no fraud, but going back to the waiver point, if the jury was able to rule in your favor because of waiver, how can you say that they found no fraud or that they found anything other than waiver as, as a matter of logic? I mean, you may be right that that was what was in their mind, but we don't know that. Am I correct? Well, I think, I think the record is very clear, your honor, that the in this case, it was not, it was not something that was the focus of the, of the case at all. How can you say that they didn't find X when they were never asked X? In fact, I have no brief for or against the brilliance of trial counsel. The trial counsel did put that out there. And, you know, having done some work myself, you never know which one's going to get through to the jury. Otherwise you wouldn't do it. I understand your honor. And, and, and in fact, you know, I, I, I'm not certain that you know, it wasn't something that we argued to the jury. So, so there was, there was no, there was an instruction, but there was no argument about it. But, but in, in, in this case, the only the only theft, I'm sorry. Oh, I don't think he said anything. Okay. He's on mute. Sorry. I wasn't sure. The only theft alleged was the fraudulent misrepresentation. And in the focus of the that was what the party spent the entire week presenting to the jury. And that is what the parties argued in closing argument. That was your time is up. Let me ask my colleague, whether either has additional questions for Ms. Wright. I do have one other question, Judge Smith. Go ahead. Is it is in a new area, the, that we haven't discussed the, the, the judge struck is not at the district court struck is not actionable. The allegation in paragraph 69 of the second amended complaint that the NetSuite presentations went on to show that the software only requires a subscription and eliminates the need to backup, upgrade, migrate, tune, or replace the software. And the court said that was too general to be actionable fraud. I'm not sure I really understand that it, it was alleged that this was a specific representation made at a specific meeting in order to induce a purchase. And those seem like pretty specific representations. Why is the district court correct, that that's not actionable? So first, I'll say that, that your question was never raised by Grass River. Grass River has not challenged a single statement that was excluded by the district court in this appeal, not one. And, and they, and Grass River also was given an opportunity to amend its complaint and, and chose never to do that. With regard to whether that is a sufficiently specific statement, I would say that the district court, you know, carefully parsed the allegations to determine what was puffery. And this instance determined that there was no, there was not enough specificity. Much of the case law around puffery requires some sort of quantification, some sort of specific number or amount that can be, you know, proven false. And, and her conclusion that this was an accurate one. I will say that there was other allegations with regard to upgrades that were included and went to the jury. So for instance, the jury was, was, was told that NetSuite said that it would handle all upgrades and the client didn't need to handle upgrades. And the jury had to determine whether or not that was a fraudulent statement. So there were, there were some other more specific statements about upgrades that were, that did go to the jury, but this one was deemed to be puffery. However, at no point has Grass River ever challenged any of the, the specific decisions that the court made with regard to what was puffery. And again, that's a, that's an abusive discretion standard. Any questions by my colleague? Very well. Thank you very much, Ms. Wrang. Appreciate it. So Mr. Kiva, you have a little rebuttal time left. You need to unmute there. I think you're, you're on, there you go. Okay. Thank you. We certainly did challenge and our brief is replete with a challenge to the district court's exclusion of what you referred to as puffery from our case. It basically gutted the case. And that is certainly part of our case on appeal. So unfortunately, Ms. Wrang's statement is just not true. Unless the court has any further questions of me, we'll waive the rest of our rebuttal time. Very well. Any other questions by my colleague? Yes. Your, your last part kind of fed into a question that I had and helped me here as I understood it. You began with something like 61 allegations of misrepresentation. That was pared down by exclusion to 16 or 17, and then ultimately nine that went to the jury. Am I roughly correct with that? Without taking off my shoes, I think your count is about right. Okay. My question then is roughly what was excluded that was obviously better than the ones that went forward. Obviously you were able to put to the jury that they did you wrong. They misrepresented all this stuff. And you had a number of examples. If I wanted to rule in your which one of these earlier ones was a game breaker compared to the ones that you did get to use? I mean, give me just your one, one or two best. Tell me there are thousands. Paragraph 88 of the second amended complaint. On March 29, 2014, based on NetSuite's commitments and representations about what it could and would accomplish and on what timetable for Grouse River, Mr. Fallis signed off on the NetSuite contract along with contracts for NetSuite's recommended partners in the project deliverables. Okay. I can look at that. And if you take a look at trial exhibit number 200, which is a key document in this case, it basically was Grouse River's express not wish list, but demand list. We need to have these functionalities. And if you take a look at those functionalities, TX was then NetSuite's response saying we can meet each of these as quote native, meaning out of the box. Okay. That's fair. I got it. Got it. Thank you, Your Honor. Any other questions by my colleague? Very well. We thank Mr. Kiva and Ms. Ray for your arguments. Good job. We appreciate your help on this. The case just argued is submitted. I'll go to the next case as soon as our tech people have got us there.
judges: Boggs, M. Smith, Bennett